IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| APPLICATION AND AFFIDAVIT OF THE | ) | |
| UNITED STATES OF AMERICA FOR AN | ) | Case No.  2:25-mj-683 |
| ANTICIPATORY SEARCH WARRANT OF THE | ) | |
| ADDRESS 1690 RICHMOND ROAD, COLUMBUS, | ) | |
| OHIO 43223, INCLUDING CURTILAGE | ) | |
| | ) | **UNDER SEAL** |

I, Justin D Koble, Postal Inspector with The United States Postal Inspection Service, being duly sworn, depose and say:

INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for an anticipatory warrant to search the premises known as 1690 Richmond Road, Columbus, Ohio 43223, its curtilage, and any detached buildings (TARGET LOCATION), further described in Attachment A, for the things described in Attachment B.

2. I am a United States Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed since July 2014.  I am currently assigned to the Narcotics and Money Laundering Team at USPIS's Columbus, Ohio field office.  In this capacity, I am responsible for investigating the illegal use of the United States Mails for the purpose of transporting controlled substances, such as methamphetamine, heroin, fentanyl, fentanyl-related analogs, cocaine, and other controlled substances, in violation of, among other statutes, Title 21, United States Code, § 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), 843(b) (unlawful use of a communication facility in the commission of a crime), and 846 (drug conspiracy).  In addition, I

am responsible for investigating possible violations of Title 18, United States Code, § 1956 and 1957 (money laundering).

3. I have been involved in the investigation and discovery of drug contraband and drug proceeds on numerous occasions. I have personally been the affiant for search warrants that have resulted in the discovery of controlled substances and drug proceeds. My current assignment to the Columbus Processing and Distribution Center (P&DC) involves investigating the use of the United States Mails by drug traffickers, in which established drug package profiles, surveillance, and drug detection dogs, among other investigative tools, are utilized.

4. I have knowledge of the facts set forth in this Affidavit based on my own participation in this investigation as well as other sources identified herein.

5. In a substantial number of residential search warrants executed in connection with the drug investigations in which I and fellow Postal Inspectors, HSI Special Agents, DEA Special Agents and Central Ohio High Intensity Drug Trafficking Area ("HIDTA") Task Force Officers, have been involved, the following kinds of drug-related evidence have typically been recovered from the residences and other locations utilized by drug-traffickers:

- Controlled substances, such as marijuana, heroin, fentanyl, methamphetamine, and cocaine.
- Paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, microwave ovens, heat-sealing devices, and dilutants such as mannitol.
- Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances.

2

- Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances.

- Cash, currency, and records relating to controlled substances income and expenditures of money and wealth, for example: money orders (e.g. Western Union, United States Postal Service (USPS), or MoneyGram), wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, check registers, cryptocurrency, and cold storage devices, as well as precious metals such as gold and silver, and precious gems, such as diamonds.

- Documents indicating travel in interstate and foreign commerce such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, telephone bills and rental car agreements.

- Electronic storage devices, such as hard drives, USB drives, or digital video recording devices (DVRs).

- Mobile electronic communication devices, such as cellular telephones, electronic storage devices, such as GPS devices and portable media players, and other such mobile electronic devices that store data, as well as the content therein.

- Firearms and other dangerous weapons; and

- Photographs, in particular, photographs of co-conspirators, assets, and/or drugs.

6. In addition, during such searches, I and other agents have also found items of personal property that tend to identify the person(s) in the premises as well as the occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases,

rental agreements, photographs, personal telephone books, utility and telephone bills, statements, identification documents, and keys to safe deposit boxes and storage facilities.

       7.      Based upon my training and experience, as well as the knowledge and experience of other agents and police officers involved in this investigation, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) in their residence or business under their control. Further, it is generally a common practice for drug traffickers to maintain in their residence or business under their control, records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed. Such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers maintain telephone and address listings of clients and suppliers and keep them readily available in order to efficiently conduct their drug trafficking business.

       8.      Based upon my training and experience, I also am aware it is common practice for traffickers to conceal at their residence or business under their control, large sums of money which represents the proceeds of drug sales or money to be used to purchase additional controlled substances. The large amounts of U.S. currency are necessary to maintain and finance their ongoing drug distribution business. In this connection and context, drug traffickers typically make use of wire transfers, cashier's checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and

expenditures of money and wealth in connection with drug trafficking would also typically be maintained in these premises.

9. Based upon my training and experience, drug traffickers commonly have in their possession, that is, on their person, at their residence or other locations in their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. I also am aware that, typically, drug traffickers possess these firearms and other dangerous weapons to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

10. Further, I am aware that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances; furthermore, I know that the aforementioned books, records, receipts, notes, ledgers, etc. are generally maintained where the traffickers have easy and ready access to them, including in their residences, automobiles, or other locations under their control.

11. Further, I am aware that persons involved in drug trafficking conceal in their residences, automobiles, or other locations under their control, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities.

12. When drug traffickers amass proceeds from the sale of drugs, they often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers. To accomplish these goals, drug traffickers often use different techniques, including but not limited to foreign and domestic banks and their attendant services; securities; cashier's

5

checks; money drafts; letters of credit; brokerage houses; the purchase of real estate; as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds.

13. Further, I am aware drug traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization. Also, drug traffickers take or cause to be taken photographs of them, their associates, their property, and their product, and these photographs are usually maintained in their possession or residence.

14. Further, I am aware drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs; and the paraphernalia would include, but are not limited to scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution. These items are necessary for the drug trafficker to carry on their drug distribution operation.

15. Further, I am aware that drug traffickers often operate under assumed names, street names, or nicknames in order to conceal their true identities from law enforcement officers, and in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names. Also, they maintain documents of their false identities in their residences and automobiles, together with evidence of their true identities.

16. I have knowledge that drug traffickers commonly seek to conceal their activities from members of the public by transacting their business in a convert manner, so as to avoid detection by law enforcement.

17. I have knowledge that it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence for their ready access and to conceal them from law enforcement authorities.

18. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following:

- My own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described.

- My involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations.

- Discussion with other members of the USPIS and law enforcement officers, both about the facts of this case in particular and about trafficking in general.

19. The information contained in this Affidavit is based on my personal observation; my training, experience, and knowledge; my review of documents and evidence obtained during the investigation; interviews of cooperating individuals; and information obtained from investigators of the USPIS and HIDTA Task Force Officers

20. The TARGET LOCATION is located on the north side of Richmond Road, west of Brown Road in Columbus' Greenleaf Neighborhood. The TARGET LOCATION is a one-story, single-family home. The exterior of the TARGET LOCATION is tan brick and white horizontal siding. The front door to the TARGET LOCATION white. The numbers "1690" are printed in black to the right of the front door.

21. The following TARGET OFFENSES are the subject of this investigation:

   a. Title 21, United States Code, § 841(a) makes it a crime to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

   b. Title 21, United States Code, § 843(b) makes it unlawful for any person knowingly or intentionally to use any communication facility in committing or causing or facilitating the commission of any act or acts constituting a felony under any provision of subchapter I or II or Chapter 13 of Title 21. For the purpose of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

   c. Title 21, United States Code, § 846 makes it a crime to attempt or conspire to commit any offense defined in Title 21, United States Code, Chapter 13, subchapter I.

22. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

PROBABLE CAUSE

COMMERCE CITY PARCEL 1

23. In or around September 4, 2025, US Postal Inspectors in Columbus, Ohio received information from US Postal Inspectors in Denver, Colorado regarding the seizure of a United States Postal Service (USPS) Priority Mail parcel (hereinafter, COMMERCE CITY PARCEL 1) found to contain approximately 2,107 grams of counterfeit Oxycontin pills which

field tested positive for the presence of fentanyl.  Below are photos of COMMERCE CITY PARCEL 1 and its contents.





      24.      COMMERCE CITY PARCEL 1 was mailed from Riverside, California on or about August 30, 2025, to 5881 E 68th Avenue, Commerce City, Colorado 80022.  COMMERCE

CITY PARCEL 1 weighed approximately 5 pounds, 9 ounces and the $20.60 in postage was paid for in cash.

25. Following the seizure of COMMERCE CITY PARCEL 1, US Postal Inspectors in Denver identified a unique Internet Protocol (IP) address used to access USPS tracking for the parcel. This IP address geolocated to the Republic of Mexico. Investigators determined this IP address had also been used to track a USPS Priority Mail parcel (hereinafter, RICHMOND RD PARCEL 1) to Columbus, Ohio. Information regarding the seizure of COMMERCE CITY PARCEL 1 and RICHMOND RD PARCEL 1 was provided to US Postal Inspectors in Columbus, Ohio for further investigation.

RICHMOND RD PARCEL 1

26. RICHMOND RD PARCEL 1 was mailed from Colton, California on or about September 2, 2025, and was delivered to 1690 Richmond Road, Columbus, Ohio 43223 on or about September 4, 2025. RICHMOND RD PARCEL 1 weighed approximately 3 pounds, 5 ounces and the $28.25 in postage was paid for in cash.

27. An image of RICHMOND RD PARCEL 1 was obtained from USPS mail processing equipment. RICHMOND RD PARCEL 1 was found to have been addressed to "Antonio Salado, 1690 Richmond Rd, Columbus, OH 43223 EE.UU", with a return address of "Edwin Gonzalez, 747 N 9th St, Colton, CA 92324". Below is an image of RICHMOND RD PARCEL 1 taken from USPS mail processing equipment.



28.     Investigators conducted checks of law enforcement, USPS, and open-source electronic databases to determine the validity of the return and destination information indicated on RICHMOND RD PARCEL 1.  The return address, "747 N 9th St", was found to be a valid and deliverable address in the 92324-zip code however, the name "Edwin Gonzalez" was not found to be associated with this address.  Similarly, the destination address, "1690 Richmond Rd", was found to be a valid and deliverable address in the 43223-zip code however, the name "Antoino Salado" was not found to be associated with this address.

RICHMOND RD PARCEL 2

29.     On or about November 25, 2025, US Postal Inspectors in Columbus, Ohio identified a second USPS Priority Mail parcel (hereinafter, RICHMOND RD PARCEL 2) destined for 1690 Richmond Road, Columbus, Ohio 43223.  RICHMOND RD PARCEL 2 was addressed to "1690 Richmond Rd, Columbus, OH 43223", without a recipient name.

11

RICHMOND RD PARCEL 2 had a return address of "Michael Torrez, 14256 LeSage Ave, Lynwood, CA 90262". RICHMOND RD PARCEL 2 was mailed from Los Angeles, California on November 19, 2025, weighed approximately 6 pounds, 6 ounces and the $21.95 in postage was paid for in cash. Below is a photo of RICHMOND RD PARCEL 2.



30. Again, investigators conducted checks of law enforcement, USPS, and open-source electronic databases to determine the validity of the return and destination information indicated on RICHMOND RD PARCEL 2. The return address, "14256 LeSage Ave", does not exist and is not served by the USPS. Because the address is fictitious, investigators were unable to conduct additional checks. Investigators are aware the delivery address "1690 Richmond Rd" is a valid address, but because a name was not included, additional checks were not conducted.

31. Investigators identified a unique IP address, geolocating in the Republic of Mexico, which had been used to access USPS tracking information for RICHMOND RD PARCEL 2. In addition to being used to track RICHMOND RD PARCEL 2, this IP address had

also been used to access USPS tracking information for USPS Priority Mail parcels originating in Southern California and delivered to addresses in Bethany, Oklahoma and Commerce City, Colorado on or about November 17, 2025, and November 24, 2025, respectively. Investigators noted Commerce City, Colorado was the intended delivery city of COMMERCE CITY PARCEL 1, leading investigators to believe these parcels are all associated and likely contain bulk controlled substances.

32. On November 25, 2025, at approximately 10:20am, RICHMOND RD PARCEL 2 was delivered to 1690 Richmond Road, Columbus, Ohio 43223 by an undercover US Postal Inspector. During delivery, the door to the residence was answered by an unidentified Hispanic female (UHF1). UHF1 asked that the parcel be left outside the residence despite the fact it was steadily raining at the time of delivery.

RICHMOND RD PARCEL 3

33. On or about December 3, 2025, US Postal Inspectors in Columbus, Ohio identified the USPS Priority Mail parcel bearing tracking number 9505 5143 9846 5336 6107 00 (hereinafter, RICHMOND RD PARCEL 3). RICHMOND RD PARCEL 3 was a size medium USPS Priority Mail box measuring approximately 12" x 3 ½" x 14" that weighs approximately 6 pounds, 1 ounce. RICHMOND RD PARCEL 3 was mailed from the USPS Hazard Branch Post Office, 3729 East 1st Street, Los Angeles, California 90063 on December 2, 2025, at approximately 3:51pm. The $21.95 in postage used to mail RICHMOND RD PARCEL 3 was paid for in cash.

34. Prior to arrival in Columbus, Ohio, investigators obtained an image of RICHMOND PARCEL 3 from USPS mail processing equipment showing it to be addressed to

"1690 Richmond Rd, Columbus Ohio 43223," with a return address of "Mike Sanchez, 14383 Duncan, Lynwood CA,90262."

35. Investigators conducted checks of law enforcement, USPS, and open-source electronic databases to determine the validity of the return and destination information indicated on RICHMOND RD PARCEL 3. The return address, "14383 Duncan", was determined to be an invalid address in the 90262-zip code and is not served by the USPS. Because the address was determined to be fictitious, investigators were unable to conduct additional checks. The destination address, "1690 Richmond Rd" was found to be a valid and deliverable address in the 43223-zip code. Because a name was not included with the delivery address, investigators were unable to complete additional checks.

36. On or about December 8, 2025, RICHMOND RD PARCEL 1 was interdicted upon arrival at a USPS mail processing facility in Columbus, Ohio. Based on the information indicated above, RICHMOND RD PARCEL 1 was submitted for examination by a drug detecting canine which provided a positive indication for the presence of controlled substances. Below is a photo of RICHMOND PARCEL 3.



37.     On or about December 8, 2025, a federal warrant to search and seize RICHMOND RD PARCEL 3 was granted in the Southern District of Ohio by the Honorable Elizabeth A. Preston Deavers, U.S. Magistrate Judge.  The search warrant was executed at approximately 11:02am the same day. RICHMOND RD PARCEL 3 was found to contain approximately 1,045 grams of compressed white powder which field tested positive for the presence of fentanyl using a TruNarc handheld narcotics analyzer.  Below are photos showing the contents of RICHMOND RD PARCEL 3.



CONCLUSION

38.     On or about December 9, 2025, your Affiant, along with additional law enforcement personnel, will attempt to conduct a controlled delivery of the RICHMOND RD PARCEL 3 to 1690 Richmond Road, Columbus Ohio 43223.  Based on prior surveillance, your Affiant believes RICHMOND RD PARCEL 3 will be taken into the TARGET LOCATION.  If RICHMOND RD PARCEL 3 is taken into 1690 Richmond Road, your Affiant is requesting an anticipatory search warrant for the residence be granted.  The Triggering Event for execution of the anticipatory search warrant will be the RICHMOND RD PARCEL 3 being taken inside the residence at 1690 Richmond Road, Columbus, Ohio 43223.

39.     If the Triggering Event does not take place, the search warrant will be rendered null and void and will not be executed.

40. I submit that this affidavit supports probable cause to search the TARGET LOCATION, described in Attachment A, and to seize the evidence, fruits, and instrumentalities of the TARGET OFFENSES, i.e. the items described in Attachment B.

41. The above information is true and correct to the best of my knowledge, information, and belief.

*Justin Koble*
Justin D. Koble
US Postal Inspector

Subscribed and sworn to before me
this ___8th day of December 2025



Elizabeth A. Preston Deavers
United States Magistrate Judge